IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

**DAVID NEWTON BREWER**                                              **PLAINTIFF**

**v.**                                         **CIVIL NO. 2:21-cv-00091-KS-RHWR**

**COMMISSIONER OF SOCIAL**                                **DEFENDANT**
**SECURITY**, *Andrew Saul*[1]

## REPORT AND RECOMMENDATION

Plaintiff David Newton Brewer seeks judicial review of the Commissioner of Social Security Administration's decision denying his applications for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. § 423(d)(1)(A), and Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. § 1382c(a)(3). *See* 42 U.S.C. § 405(g). Having reviewed Plaintiff's Brief [17], the Commissioner's Brief [18], the administrative record [11, 12, 13, 14, 15], and relevant law, it is recommended that the decision of the Commissioner be affirmed

The administrative law judge ("ALJ") did not err in finding the opinions of Plaintiff's treating rheumatologist, Seth Compton, M.D. unpersuasive, and finding other treating sources' opinions unpersuasive, while simultaneously finding the opinions of a nonexamining expert rheumatologist, H.C. Alexander, III, M.D. persuasive. Because the ALJ applied the proper legal analysis and supported her decision with substantial evidence, it is conclusive.

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Federal Rule of Civil Procedure 25(d), Kilolo Kijakazi is automatically substituted, in place of Andrew Saul, as Defendant in this action. No further action need be taken to continue this suit. 42 U.S.C. § 405(g).

I. BACKGROUND

Plaintiff applied for benefits on January 29, 2019, alleging disability beginning July 25, 2018, when he was 39 years of age, due to lupus, seizures, and mood swings. [11] at 151. Plaintiff completed eleventh grade and obtained a G.E.D. *Id.* at 99, 122. He worked in the past as a log truck driver, tractor trailer driver, heavy truck driver, and milk driver. *Id.* at 42. He also performed composite jobs as a material handler, general merchandise salesperson, warehouse supervisor, and store laborer. *Id.* Plaintiff's past jobs required him to lift up to 60, 75, and 100 pounds. *Id.* at 36.

Plaintiff proceeded through the administrative process, and an ALJ held a hearing and rendered a decision finding Plaintiff not disabled under the definition of the Social Security Act. *Id.* at 191-204. The Appeals Council remanded to the ALJ, ordering her to further evaluate whether Plaintiff's impairments met or medically equaled the severity of an impairment listed in Appendix 1, Subpart P of Part 404 – Listing of Impairments. The ALJ was also ordered to further evaluate the opinion of Seth Compton, M.D., a rheumatologist who treated Plaintiff for lupus and its symptoms. *Id.* at 211-13. The Appeals Council directed the ALJ to address not only Plaintiff's seizures but his consistent reports of fatigue and oral ulcers found in Dr. Compton's records. *Id.* at 211.

The ALJ held a second hearing, at which Plaintiff appeared with counsel and testified. *Id.* at 115-46. A medical expert and vocational expert also testified. *Id.* at 128-45. The medical expert, H.C. Alexander, III, M.D., was a consultant

rheumatologist who reviewed medical evidence but did not examine Plaintiff. *Id.* at 118.

On March 1, 2021, the ALJ issued a decision finding Plaintiff had severe impairments of systemic lupus erythemafosis ("SLE"), seizure disorder, degenerative disc disease, and depression but was not disabled under the definition of the Social Security Act from July 25, 2018 through the date of the decision, March 1, 2021. *Id.* at 26-51. The Appeals Council denied Plaintiff's request for review, making the ALJ's March 1, 2021, decision the final decision of the Commissioner.

On appeal, Plaintiff argues that the ALJ failed to properly evaluate the medical opinions of Dr. Compton and should not have dismissed his and other examining and treating physicians' opinions in favor of nonexamining medical expert, Dr. Alexander. [17] at 4-6. The Commissioner counterargues that the ALJ properly considered the medical opinions. [18] at 6-9.

## II. ANALYSIS

A. Standard of Review

The Court reviews the Commissioner's denial of Social Security benefits only to ascertain whether (1) the final decision is supported by substantial evidence and (2) whether the Commissioner used the proper legal standards to evaluate the evidence. *See* 42 U.S.C. § 405(g); *Salmond v. Berryhill*, 892 F.3d 812, 816-17 (5th Cir. 2018). The Court does not "reweigh the evidence in the record, try the issues *de novo,* or substitute [its] judgment for the Commissioner's, even if the evidence weighs against the Commissioner's decision. *Salmond,* 892 F.3d at 817 (citations omitted).

"A decision is supported by substantial evidence if credible evidentiary choices or medical findings support the decision. Substantial evidence is more than a mere scintilla but less than a preponderance." *Id.* (citations omitted).

"To determine whether a claimant is disabled, the Commissioner's analysis proceeds along five steps." *Webster v. Kijakazi,* 19 F.4th 715, 718 (2021); *see* 20 C.F.R. § 404.1520(a) and 416.920(a). The Commissioner considers (1) whether the claimant is engaged in "substantial gainful activity," (2) the severity and duration of the claimant's impairments, (3) whether the claimant's impairment met or medically equaled the severity of an impairment listed in Appendix 1, Subpart P, Regulations No. 4 (20 C.F.R. §§ 404.1513a(b)(2) and 416.913a(b)(2)), (4) whether the claimant can still do "past relevant work," and (5) whether the impairment prevents the claimant from doing any relevant work. *See Webster,* 19 F.4th at 718. "The claimant bears the burden on the first four steps." *Id.* "If the claimant advances that far, the burden shifts to the Commissioner to 'prove the claimant's employability.'" *Id.*

The ALJ must articulate how persuasive he or she finds "all of the medical opinions" in a claimant's case record. 20 C.F.R. §§ 404.1520c and 416.920c. The five factors for determining the persuasiveness of a medical opinion are: supportability, consistency, relationship with the claimant, specialization, and other factors (*i.e.*, familiarity with other evidence in the claim or an understanding of the Social Security Administration's evidentiary requirements). *Id.* §§ 404.1520c(b), (c) and 416.920c(b), (c).

Supportability and consistency are the most important factors, and the ALJ "will explain how [her or she] considered the supportability and consistency factors for a medical source's medical opinions . . . . [The ALJ] "may, but [is] not required to, explain how [he or she] considered the" remaining factors. *Id.* §§ 404.1520c(b)(2) and 416.920c(b)(2). "The more relevant the objective medical evidence and supporting explanations presented by a medical source to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." *Id.* §§ 404.1520c(c)(1) and 416.920c(c)(1). "The more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." *Id.* §§ 404.1520c(c)(2) and 416.920c(c)(2).

A claimant's residual functional capacity ("RFC") is used at the fourth step to determine if he or she can still do past relevant work and at the fifth step to determine whether he or she can adjust to any other type of work. 20 C.F.R. §§ 404.1520(e) and 416.920(e). A claimant's RFC is evaluated by determining the most he or she can still do despite his or her physical and mental limitations based on all relevant evidence in the record. 20 C.F.R. § 404.1520(a)(4), (e) and 416.920(a)(4), (e). "Ordinarily, RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." *Titles II & XVI: Assessing Residual Functional Capacity in Initial Claims*, SSR 96-8P (Mar. 28, 2016).

B. The RFC and Plaintiff's Arguments

The ALJ's RFC limited Plaintiff to performing medium work as defined in 20 C.F.R. 404. 1567(c) and 416.967(c), which "involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds," except Plaintiff was limited to the following:

> he can frequently climb ramps or stairs, balance, kneel, stoop, crouch, and crawl. He should never climb ladders, ropes, or scaffolds or be exposed to workplace hazards such as moving mechanical parts or high exposed places. He cannot work around open bodies of water or open flames, drive as part of the job, or work in direct sunlight. He has the ability to understand, remember, and carry out instructions to perform simple, routine tasks but he should not work in an environment that is stringently production or quota-based, and thus he may not perform fast-paced assembly line type of work, but he can meet production requirements that allow a flexible and goal oriented process.

[11] at 35.

Dr. Compton's opinions, on the other hand, precluded even sedentary work. The ALJ summarized Dr. Compton's opinions as follows and did not account for them in the RFC:

> Dr. Compton specifically noted claimant's diagnoses of systemic lupus and seizures in supporting his opinions, noting fatigue, intermittent oral ulcers, intermittent seizures, and peripheral joint pain as claimant's symptoms. In one assessment, Dr. Compton opined that the claimant would be off-task 10 percent to 34 to 66 percent of the workday and would be absent for two to four days per month . . . In another assessment, Dr. Compton opined the claimant could stand and/or walk less than two hours and sit about four hours in a normal workday. He further indicated the claimant did not need to elevate his legs or use a cane. Dr. Compton opined that the claimant could occasionally lift and/or carry 20 pounds and frequently lift and/or carry 10 pounds; occasionally twist, stoop, and crouch; rarely climb stairs; and never climb ladders.

*Id.* at 40.

Plaintiff asserts that the ALJ used boilerplate language to reject the opinions of Dr. Compton. *Id.* at 4. Plaintiff disagrees with the ALJ's conclusion that Dr. Compton's opinions were not supported by his treatment records. *Id.* at 5. Plaintiff maintains that the ALJ should not have dismissed the opinions of examining and treating physicians in favor of the opinions of a consultative medical expert rheumatologist, Dr. Alexander, who did not examine Plaintiff. *Id.*

1. **The ALJ Did Not Use Boilerplate Language to Reject Dr. Compton's Opinions**

Plaintiff first asserts that "[s]tating that a provider's records 'contained no objective findings,' to support an opinion without further explanation, is meaningless boilerplate." [17] at 4 (citing *Bridges v. Comm'r of Soc. Sec.*, No. 4:20-CV-89-DMB-DAS, 2021 WL 2908671, at *2 (N.D. Miss. June 21, 2021), report and recommendation adopted sub nom. *Bridges v. Saul*, No. 4:20-CV-89-DMB-DAS, 2021 WL 2907892 (N.D. Miss. July 9, 2021)). Here, the ALJ did not use meaningless boilerplate without further explanation.

In multiple places in her opinion, the ALJ articulated why she found Dr. Compton's opinions unpersuasive. She stated that Dr. Compton "does not give specific evidence for complications of lupus. Severe fatigue can be caused by many things and are all subjective. But Dr. Compton specifically stated the claimant had no synovitis in his joints." [11] at 37, 735. The ALJ went into further detail as follows:

> As pointed out by the medical expert, Dr. Alexander, in his testimony, Dr. Compton failed to document objective evidence of active systemic lupus erythematosus (SLE), including synovitis, skin changes, joint involvement, inflammatory arthritis, pulmonary involvement, renal involvement, or encephalitis. Furthermore, the totality of the medical

7

> evidence shows that subjective complaints [of] fatigue were intermittent. While Dr. Compton's opinion relies in part on claimant's history of seizures, the claimant testified that he has not had a seizure in two years. As a result of Dr. Compton's failure to document medical evidence supporting his opinions, it is unpersuasive.

*Id.* at 40.

The ALJ then reiterated that "Dr. Alexander testified that Dr. Compton failed to document objective evidence of [SLE], including synovitis, skin changes, joint involvement, inflammatory arthritis, pulmonary involvement, renal involvement, or encephalitis to support his opinions" and "[a]s far as claimant's subjective complaints of fatigue scattered throughout the record, Dr. Alexander pointed out that while fatigue can be associated with many impairments, the medical evidence of record contains entirely subjective complaints, without objective findings to support fatigue, such as muscle weakness." *Id.* at 41.

The ALJ credited Dr. Alexander's opinions over Dr. Compton's opinions because "Dr. Alexander was able to provide specific notations to objective medical evidence which refuted Dr. Compton's . . . opinions." *Id.* at 41. The ALJ summarized some of the objective medical evidence as follows:

> [a] thoracic spine MRI . . ., December 26, 2018, which showed a small fragment extrusion effacing the thecal sac but no objective evidence for radiculopathy or joint tenderness . . . . A lumbar spine MRI was normal . . . and a cervical spine MRI . . . showed some stenosis but no evidence disc protrusion or stenosis and no evidence of upper extremity radiculopathy.

[11] at 36.

> A computerized tomography (CT) of the claimant's head showed no acute ischemic changes or masses or intracranial findings. Additionally, magnetic resonance imaging (MRI) of the claimant's brain showed no

8

>acute abnormalities and x-rays of the claimant's chest showed his lungs were clear and he had no acute cardiopulmonary findings. The claimant also had a normal electroencephalogram (EEG) test that showed no active seizures focus and a normal 24-hour digital video EEG, which recorded events, none of which were associated with a seizure. Upon examination, the claimant had normal range of motion in his extremities, normal breath sounds, no tenderness, and a normal regular rhythm and intact distal pulses.

*Id.* at 37.

The ALJ's focus on the objective evidence was appropriate as Social Security Ruling 16-3p explains. SSR 16-3p: Titles II and XVI: Evaluation of Symptoms in Disability Claims, SSR 16-3p (Mar. 28, 2016). "Symptoms cannot always be measured objectively through clinical or laboratory diagnostic techniques. However, objective evidence is a useful indicator to help make reasonable conclusions about the intensity and persistence of symptoms, including the effect those symptoms may have on the ability to perform work-related activities . . . ." "A report of minimal or negative findings or inconsistencies in the objective medical evidence is one of the many factors we consider in evaluating the intensity, persistence, and limiting effects of an individual's symptoms." *Id.*

The ALJ considered that there was no evidence of tongue biting, injury, or documentation of incontinence secondary to Plaintiff's seizures. *Id.* at 36, 130. She noted that Plaintiff was diagnosed with obstructive sleep apnea, was somewhat noncompliant in using his CPAP, but he experienced no right-side heart failure or other complications from noncompliance. *Id.* at 32, 36, 132. The ALJ emphasized that Dr. Compton's opinions "relie[d] in part on claimant's history of seizures," but Plaintiff testified that he had not had a seizure in two years. *Id.* at 39-40.

9

The ALJ considered Plaintiff's reports that he "could prepare his own meals, do cleaning, do laundry, do household repairs, mow the lawn, wash dishes, independently handle his finances, and go to the store to buy books, clothes, model cars, groceries, and house supplies." *Id.* at 34. In a normal day, Plaintiff awoke at 8:00 a.m., took a while to "get going," and then fed the animals, checked the mail, and did "general stuff." *Id.* Plaintiff had a driver's license, drove, but did not have a handicap tag. *Id.* at 36. Plaintiff took seven medications and "[was] not sure about any side effects." *Id.* Plaintiff's "psychiatrist observed the claimant's thought process was logical, coherent, goal-directed, and his attention/concentration was good." *Id.* at 34. Plaintiff's assertion that the ALJ used boilerplate language to reject Dr. Compton's opinions is incorrect.

2. **The Court May Not Reweigh the Evidence**

Plaintiff's second argument is that the ALJ was wrong to conclude that Dr. Compton's opinions were not supported by his treatment records. This argument fails for reasons already explained. The ALJ found that Dr. Compton's disabling opinions were not supported by objective findings in the treatment records, and were partially based on seizures, which Plaintiff had not experienced for two years at the time of the hearing.

The ALJ specifically summarized some of Dr. Compton's records that she found did not support his opinions. The ALJ observed that Plaintiff was treated by Dr. Compton on June 27, 2018, and August 22, 2018 where it was noted there were "no synovitis, skin changes, or active SLE with dermatologic, cardiac, or other system

manifestation. They were looking into possible lupus encephalitis but a lumbar puncture and laboratory studies of the cerebrospinal fluid ruled that out." [11] at 36.

Plaintiff returned on October 30, 2018, "for a follow-up medical visit and reported tremors and twitching of his extremities, but that his episodes had decreased significantly in frequency and he had not had an episode in two weeks." *Id.* at 37, 677. Dr. Compton characterized Plaintiff's conditions as "likely mild SLE." *Id.* at 37, 676, 735.

In 2019, Dr. Compton's records reflected that Plaintiff "denied excessive sweating, shortness of breath, syncope, chest pain, muscle aches, painful joints, swollen joints, weakness, and back pain. Upon examination, the claimant was found to have no edema, normal motor strength, normal gait, but some tenderness in his back." *Id.* at 37, 627-47, 735-41. The ALJ noted that during an October 2, 2019 examination, Dr. Compton found "that the claimant's fatigue remained an issue, but his arthralgias and ulcers were better in general; he reported he had been doing pretty well over the prior four to five months and that physical therapy had helped. Further, during the medical visit, the claimant stated that he had not had a seizure in five months (Exhibit 8F) . . . . [11] at 38, 738-41.

While Plaintiff asserts that Dr. Compton's opinions supported a different conclusion, the fact that the ALJ viewed the evidence differently is not grounds for reversal. It is the sole responsibility of the ALJ to weigh the evidence to determine a claimant's RFC. The assessment of a claimant's work capacity is reserved solely to the ALJ and is based on all the evidence, not just the medical evidence. *See Ripley v.*

11

*Chater*, 67 F.3d 552, 557 (5th Cir. 1995); 20 C.F.R. §§ 404.1546(c), 416.946(c); SSR 96-8p.o

### 3. **The Treating Source Rule Has Been Eliminated**

Finally, Plaintiff argues that this is a case like *Kneeland v. Berryhill,* where the Court of Appeals for the Fifth Circuit stated that "the reports of physicians who did not examine the claimant, taken alone, would not be substantial evidence on which to base an administrative decision." 850 F.3d 749, 761 (5th Cir. 2017). Plaintiff complains that the ALJ "completely dismiss[ed] every examining and treating opinion in this case while also finding Dr. Alexander's, the medical expert, testimony to be persuasive. Dr. Alexander never examined the Plaintiff." [17] at 5.

Plaintiff's reliance on *Kneeland* is misplaced because the Social Security Administration eliminated the treating source rule for claims filed on or after March 27, 2017, such as Plaintiff's. *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5852-57 (Jan. 18, 2017). The Commissioner does "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . including those from your medical sources." 20 C.F.R. § 404.1520c(a); *see Webster,* 19 F.4th at 719 (explaining that "ALJs are no longer required to give controlling weight to a treating physician's opinion, as was mandated by federal regulations and our prior caselaw in the past."). The rules are now aligned to focus more on the content of the medical evidence, and there is not an automatic hierarchy for treating sources, examining sources, and then non-examining sources which must be mechanically applied. 81 Fed. Reg. 62560-01,

2016 WL 4702272 (Sept. 9, 2016); 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5852-57 (Mar. 27, 2017).

"Relationship with the claimant" is a persuasiveness factor, and the rules continue to allow an ALJ to consider an individual's treating source's medical opinion "to be the most persuasive medical opinion if it is both supported by relevant objective medical evidence and the source's explanation, and is consistent with other evidence, as described in final 404.1520c and 416.920c." 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5852-57. The general premise of Plaintiff's appeal fails because "adjudicators can currently find a treating source's medical opinion is not well-supported or is inconsistent with the other evidence and give it little weight, while also finding a medical opinion from an examining source, such as a consultative examiner, or nonexamining source, such as a medical or psychological consultant, is supported and entitled to great weight." *Id.* at 5853.

### III. RECOMMENDATION

The ALJ's March 1, 2021, decision should be affirmed, and Plaintiff's appeal dismissed with prejudice.

### IV. NOTICE OF RIGHT TO OBJECT

Within fourteen days after being served with a copy, any party may serve and file with the Clerk of Court written objections to this Report and Recommendation. Within seven days of service of the objection, the opposing party or parties must either serve and file a response or notify the district judge that they do not intend to respond to the objection. L.U.Civ.R. 72(a)(3).

A district judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A district judge may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions. *See* 28 U.S.C. § 636(b)(1).

An objecting party must specifically identify the findings, conclusions, and recommendations to which he objects. A district judge need not consider frivolous, conclusive, or general objections. A party who fails to file written objections to the proposed findings, conclusions, and recommendations shall be barred, except upon grounds of plain error, from attacking on appeal any proposed factual finding or legal conclusion adopted by the Court to which he did not object. *Douglass v. United Servs. Auto. Assoc.,* 79 F.3d 1415, 1428-29 (5th Cir. 1996).

**SIGNED,** this the 15th day of June, 2022.

*s/ Robert H. Walker*
ROBERT H. WALKER
UNITED STATES MAGISTRATE JUDGE